

**FILED**
CLERK, U.S. DISTRICT COURT

2/25/2025

**CENTRAL DISTRICT OF CALIFORNIA**
BY: _____MMC_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>EDUARDO DOMINGO RENOJ-MATUL,<br>  aka "Turko,"<br>  aka "Turco,"<br>  aka "El Jefe,"<br>  aka "Patron,"<br>  aka "El Gallo,"<br>CRISTOBAL MEJIA-CHAJ,<br>HELMER OBISPO-HERNANDEZ,<br>  aka "Xabi,"<br>  aka "Xavi," and<br>JOSE PAXTOR-OXLAJ,<br>  aka "Vale Viente,"<br><br>       Defendants. | CR   2:25-CR-00129-CV<br><br>I N D I C T M E N T<br><br>[8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(i), (ii), (iii), (a)(1)(B)(i), (iv): Conspiracy to Bring Aliens to the United States, Transport Aliens in the United States, and Harbor Aliens in the United States for Private Financial Gain and Resulting in Death; 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(II), (a)(1)(B)(i), (iv): Transporting Aliens in the United States for Private Financial Gain and Resulting in Death; 18 U.S.C. § 1203(a): Hostage Taking; 8 U.S.C. §§ 1324(b), 18 U.S.C. § 982(a)(6)(A), 18 U.S.C. § 981(a)(1)(C) and (G), and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

///

///

///

///

COUNT ONE

[8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(i), (ii), (iii),

(a)(1)(B)(i), (iii), (iv)]

[ALL DEFENDANTS]

A.    INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.    The Renoj-Matul transnational criminal organization ("Renoj-Matul TCO") operated for at least a dozen years and specialized in the smuggling of illegal aliens from Guatemala to the United States, the transportation and movement of those illegal aliens within the United States, and the harboring, concealing, and shielding of illegal aliens within the United States.  As such, it was one of the largest human smuggling organizations in the United States, moving approximately 20,000 illegal aliens from 2019 through July 2024.  The illegal aliens were not United States citizens and did not have prior official authorization from the United States government to come to, enter, and reside in the United States.

2.    Defendant EDUARDO DOMINGO RENOJ-MATUL, also known as ("aka") "Turko," aka "Turco," aka "El Jefe," aka "Patron," aka "El Gallo" ("RENOJ-MATUL"), is the leader of the Renoj-Matul TCO. Defendant RENOJ-MATUL is a citizen and national of Guatemala and is illegally and unlawfully in the United States.

3.    Defendant RENOJ-MATUL worked with others, including, but not limited to, the following:

(a)    Associates in Guatemala who solicited illegal aliens to come to the United States, accepted payment of between $15,000 and $18,000 for each illegal alien to be smuggled into the United States,

and coordinated the journey of the illegal aliens from Guatemala to the United States.

        (b)  Mexican smuggling organizations who accepted Guatemalan illegal aliens in southern Mexico, transported those illegal aliens through Mexico, and then smuggled those illegal aliens across the U.S.-Mexico border.

        (c)  In the United States, lieutenants within the Renoj-Matul TCO were in charge of particular smuggling cells, teams of drivers who transported illegal aliens, and operators of stash houses where illegal aliens were held while they were within the United States.

    4.  Defendant CRISTOBAL MEJIA-CHAJ ("MEJIA-CHAJ") was defendant RENOJ-MATUL's right-hand man and operated an illegal alien stash house located on James M. Wood Boulevard, in Los Angeles, California (the "Wood House").  Illegal aliens smuggled by the Renoj-Matul TCO were brought to the Wood House.  After an illegal alien's smuggling fee was paid, the illegal alien was transported by co-conspirators from the Wood House to another destination within the United States. Defendant MEJIA-CHAJ is a citizen and national of Guatemala and is illegally and unlawfully in the United States.

    5.  Defendant HELMER OBISPO-HERNANDEZ, aka "Xabi," aka "Xavi" ("OBISPO-HERNANDEZ"), was a lieutenant within the Renoj-Matul TCO and a supervisor of a team of drivers.  Defendant OBISPO-HERNANDEZ transported and coordinated the transport of illegal aliens for defendant RENOJ-MATUL.  As a lieutenant in the organization, he also had the ability to run his own intra-United States alien transportation operation.  Defendant OBISPO-HERNANDEZ is a citizen

1    and national of Guatemala and is illegally and unlawfully in the

2    United States.

3        6.    Defendant JOSE PAXTOR-OXLAJ, aka "Vale Viente" ("PAXTOR-

4    OXLAJ"), was a driver for the Renoj-Matul TCO.  Defendant PAXTOR-

5    OXLAJ is a citizen and national of Guatemala and is illegally and

6    unlawfully in the United States.

7    B.   OBJECTS OF THE CONSPIRACY

8        7.    Beginning on a date unknown, and continuing through the

9    date of this indictment, in Los Angeles, Riverside, and San

10   Bernardino Counties, within the Central District of California, the

11   District of Arizona, the Western District of Oklahoma, and elsewhere,

12   defendants RENOJ-MATUL, MEJIA-CHAJ, OBISPO-HERNANDEZ, and PAXTOR-

13   OXLAJ, and others known and unknown to the Grand Jury, knowingly

14   conspired and agreed with each other to:

15        (a)   Bring and attempt to bring illegal aliens to the

16   United States in any manner whatsoever at a place other than a

17   designated port of entry or place other than as designated by the

18   Secretary of the Department of Homeland Security, knowing that such

19   persons are illegal aliens and regardless of whether such illegal

20   alien had received prior official authorization to come to, enter,

21   and reside in the United States and regardless of any future official

22   action which may be taken in respect to such illegal alien, for

23   private financial gain, in violation of Title 8, United States Code,

24   Sections 1324(a)(1)(A)(i), (B)(i);

25        (b)   Transport and move illegal aliens within the United

26   States by means of transportation or otherwise, for private financial

27   gain, causing serious bodily injury and resulting in multiple deaths,

28   knowing and in reckless disregard of the fact that said illegal

4

1  aliens had come to, entered, and remained in the United States in

2  violation of the law, in violation of Title 8, United States Code,

3  Sections 1324(a)(1)(A)(ii), (B)(i), (B)(iii), and (B)(iv); and

4       (c)  To conceal, harbor, and shield from detection, illegal

5  aliens that had come to, entered, and remained in the United States

6  in violation of law, for the purpose of private financial gain, in

7  violation of Title 8, United States Code, Sections

8  1324(a)(1)(A)(iii), (B)(i).

9  C.  <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE</u>

10      <u>ACCOMPLISHED</u>

11      The objects of the conspiracy were to be accomplished, in

12  substance, as follows:

13      8.  Unindicted co-conspirators in Guatemala would solicit

14  illegal aliens to be smuggled into the United States.

15      9.  Unindicted co-conspirators in Guatemala would gather

16  illegal aliens to be smuggled into the United States and transport

17  them into southern Mexico where they would be handed off to a Mexico-

18  based smuggling organization.

19      10.  The Mexico-based smuggling organization would transport the

20  Guatemalan illegal aliens through Mexico to the border between the

21  Mexican State of Sonora and Arizona, smuggle the illegal aliens

22  across the border, and hold them in stash houses located in and

23  around Phoenix, Arizona, in order to be picked up by members and

24  associates of the Renoj-Matul TCO.

25      11.  Defendants RENOJ-MATUL and OBISPO-HERNANDEZ, and unindicted

26  co-conspirators, would arrange the transport of illegal aliens from

27  the Phoenix-area stash houses to Renoj-Matul TCO-controlled stash

28  houses located in and around Los Angeles, including the Wood House.

12.   Unindicted co-conspirators would drive illegal aliens from in and around Phoenix to in and around Los Angeles, at the direction of defendants RENOJ-MATUL, OBISPO-HERNANDEZ, and other unindicted co-conspirators.

13.   Defendants RENOJ-MATUL and MEJIA-CHAJ, and unindicted co-conspirators, would oversee the operation of the Wood House, including the detention of illegal aliens.

14.   After the payment of fees owed by an illegal alien, defendant RENOJ-MATUL would authorize the release of that illegal alien for further transportation to another destination in the United States.

15.   If an illegal alien's smuggling fees were not paid, defendants RENOJ-MATUL and MEJIA-CHAJ, and unindicted co-conspirators, would hold that illegal alien against their will at the Wood House until their fee was paid.

16.   Defendants RENOJ-MATUL and OBISPO-HERNANDEZ, and unindicted co-conspirators, would arrange to transport and move illegal aliens to various destinations within the United States.

17.   Within the United States, unindicted co-conspirators would drive illegal aliens to other destinations in vehicles provided by defendants RENOJ-MATUL and OBISPO-HERNANDEZ and unindicted co-conspirator lieutenants.

18.   Within the United States, defendant OBISPO-HERNANDEZ and unindicted co-conspirators would arrange to transport and move illegal aliens in exchange for a fees.

19.   Defendant PAXTOR-OXLAJ and other co-conspirators would drive illegal aliens already in the United States throughout the United States in exchange for a fee.

20.   Defendant RENOJ-MATUL would direct that the transportation of proceeds from human smuggling be transported from Los Angeles to Phoenix to be given to the Mexican smuggling organization and pay Renoj-Matul TCO expenses.

21.   Unindicted co-conspirators would transport proceeds from the Renoj-Matul TCO from Los Angeles to Phoenix to be given to the Mexican smuggling organizations and to pay Renoj-Matul TCO expenses.

D.   OVERT ACTS

22.   On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants RENOJ-MATUL, MEJIA-CHAJ, OBISPO-HERNANDEZ, and PAXTOR-OXLAJ, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Transportation of Illegal Aliens on September 14, 2021

Overt Act No. 1:   On September 14, 2021, defendant RENOJ-MATUL arranged for unindicted co-conspirator 1 to transport three illegal aliens, J.D., M.P, and D.C., to Georgia, Tennessee, and Colorado, respectively.

Overt Act No. 2:   On September 14, 2021, unindicted co-conspirator 1 transported three illegal aliens, J.D., M.P, and D.C., to Georgia, Tennessee, and Colorado, respectively.

Transportation of Illegal Aliens on September 25, 2021

Overt Act No. 3:   On September 25, 2021, defendant RENOJ-MATUL arranged for unindicted co-conspirator 1 to transport four illegal aliens, A.R., L.P., C.R. and E.B., to New York, Virginia, Delaware, and New York, respectively.

1    <u>Overt Act No. 4:</u>    On September 25, 2021, unindicted co-

2    conspirator 1 transported four illegal aliens, A.R., L.P., C.R. and

3    E.B., to New York, Virginia, Delaware, and New York, respectively.

4        <u>Transportation of Illegal Aliens on February 1, 2022</u>

5        <u>Overt Act No. 5:</u>    On February 1, 2022, defendant RENOJ-MATUL

6    arranged for unindicted co-conspirator 1 to transport six illegal

7    aliens, R.V., M.M., N.H., R.H., P.T., and J.G., to New York and two

8    illegal aliens, M.P. and J.P., to Chicago, Illinois.

9        <u>Overt Act No. 6:</u>    On February 1, 2022, unindicted co-

10   conspirator 1 transported six illegal aliens, R.V., M.M., N.H., R.H.,

11   P.T., and J.G., to New York and two illegal aliens, M.P. and J.P., to

12   Chicago.

13       <u>Transportation of Illegal Aliens on June 27, 2022</u>

14       <u>Overt Act No. 7:</u>    On June 27, 2022, defendant RENOJ-MATUL

15   arranged for unindicted co-conspirator 1 to transport eight illegal

16   aliens, M.T., K.T., C.H., H.O., L.P., M.M., C.L., and S.M., to

17   Alabama, Alabama, New York, Florida, Mississippi, New York, North

18   Carolina, and Washington, D.C., respectively.

19       <u>Overt Act No. 8:</u>    On June 27, 2022, unindicted co-conspirator

20   1 transported eight illegal aliens, M.T., K.T., C.H., H.O., L.P.,

21   M.M., C.L., and S.M., to Alabama, Alabama, New York, Florida,

22   Mississippi, New York, North Carolina, and Washington, D.C.,

23   respectively.

24       <u>Transportation of Proceeds on August 1, 2022</u>

25       <u>Overt Act No. 9:</u>    On August 1, 2022, unindicted co-conspirator

26   2 transported approximately $40,000 in proceeds of the Renoj-Matul

27   TCO operation from Los Angeles to Phoenix.

28

1    <u>Transportation of Illegal Aliens on October 30, 2022</u>

2    <u>Overt Act No. 10:</u>   On October 30, 2022, defendant RENOJ-MATUL

3    arranged for unindicted co-conspirator 1 to transport eight illegal

4    aliens, J.R., J.S., A.M., K.M., C.X., H.D.L., D.S. and R.P, to New

5    York, Washington, D.C., Ohio, Ohio, Philadelphia, Washington, D.C.,

6    New York, and Utah, respectively.

7    <u>Overt Act No. 11:</u>   On October 30, 2022, unindicted co-

8    conspirator 1 transported eight illegal aliens, J.R., J.S., A.M.,

9    K.M., C.X., H.D.L., D.S. and R.P, to New York, Washington, D.C.,

10   Ohio, Ohio, Philadelphia, Washington, D.C., New York, and Utah,

11   respectively.

12   <u>Transportation of Proceeds and Illegal Aliens on March 7, 2023</u>

13   <u>Overt Act No. 12:</u>   On March 7, 2023, defendant RENOJ-MATUL

14   arranged for unindicted co-conspirator 3 to transport $65,000 in

15   proceeds from human smuggling from Los Angeles to Phoenix and return

16   with four illegal aliens.

17   <u>Overt Act No. 13:</u>   On March 7, 2023, unindicted co-conspirator

18   3 transported $65,000 in proceeds of human smuggling from Los Angeles

19   to Phoenix.

20   <u>Overt Act No. 14:</u>   On March 7, 2023, unindicted co-conspirator

21   3 transported four illegal aliens from Phoenix to Los Angeles.

22   <u>Transportation of Proceeds on March 10, 2023</u>

23   <u>Overt Act No. 15:</u>   On March 10, 2023, defendant RENOJ-MATUL

24   arranged for unindicted co-conspirator 3 to transport $60,000 in

25   proceeds from human smuggling from Los Angeles to Phoenix.

26   <u>Overt Act No. 16:</u>   On March 10, 2023, unindicted co-conspirator

27   3 and unindicted co-conspirator 4 transported $60,000 in proceeds

28   from human smuggling from Los Angeles toward Phoenix.

1    Transportation of Illegal Aliens on March 25, 2023

2    Overt Act No. 17:   On March 25, 2023, defendant RENOJ-MATUL

3    arranged for unindicted co-conspirator 1 to transport eight illegal

4    aliens, V.M., E.L., L.T., C.R., J.O., J.R., E.O., and J.C., to

5    Massachusetts, New York, New Jersey, Massachusetts, New Jersey,

6    Michigan, Chicago, and Georgia, respectively.

7    Overt Act No. 18:   On March 25, 2023, unindicted co-conspirator

8    1 transported eight illegal aliens, V.M. E.L., L.T., C.R., J.O.,

9    J.R., E.O., and J.C., to Massachusetts, New York, New Jersey,

10    Massachusetts, New Jersey, Michigan, Illinois, and Georgia,

11    respectively.

12    Transportation of Illegal Aliens Resulting in Death on

13    November 21, 2023

14    Overt Act No. 19:   Prior to November 20, 2023, defendant

15    OBISPO-HERNANDEZ instructed defendant PAXTOR-OXLAJ to transport six

16    illegal aliens, K.X.F.C., G.C.S, C.V.X.C., A.A.E.C.T., R.E.T.X., and

17    E.V.X.X., from New York to Los Angeles and one illegal alien,

18    J.M.L.A., from Oklahoma to Atlanta, Georgia, via Los Angeles.

19    Overt Act No. 20:   On November 20, 2023, in the state of New

20    York, defendant PAXTOR-OXLAJ picked up six illegal aliens, K.X.F.C.,

21    G.C.S, C.V.X.C., A.A.E.C.T., R.E.T.X., and E.V.X.X., in order to

22    transport them to Los Angeles.

23    Overt Act No. 21:   On November 21, 2023, defendant PAXTOR-OXLAJ

24    picked up illegal alien J.M.L.A. in Oklahoma and continued to

25    transport J.M.L.A. and six other illegal aliens towards Los Angeles.

26    Overt Act No. 22:   On November 21, 2023, in the area of Elk

27    City, Oklahoma, while transporting illegal aliens K.X.F.C., G.C.S,

28    C.V.X.C., A.A.E.C.T., R.E.T.X., E.V.X.X, and J.M.L.A., and while en

route to Los Angeles, defendant PAXTOR-OXLAJ caused a vehicle collision that killed illegal aliens K.X.F.C., G.C.S, C.V.X.C., A.A.E.C.T., R.E.T.X., E.V.X.X., and J.M.L.A.

  <u>Overt Act No. 23:</u> On November 21, 2023, after the vehicle collision, defendant PAXTOR-OXLAJ took photos of the aftermath of the collision and the victims, including the following:





1    Overt Act No. 24:    On November 21, 2023, defendant PAXTOR-OXLAJ

2    and defendant OBISPO-HERNANDEZ had two WhatsApp video calls following

3    the accident, and defendant OBISPO-HERNANDEZ received the preceding

4    two photographs.

5    Transportation of Illegal Aliens on February 23, 2024

6    Overt Act No. 25:    On February 23, 2024, unindicted co-

7    conspirator 5 arranged for unindicted co-conspirator 7 to transport

8    two illegal aliens, L.F.M.C. and E.A.M.C., from Los Angeles to

9    Phoenix.

10    Overt Act No. 26:    On February 23, 2024, unindicted co-

11    conspirator 6 and unindicted co-conspirator 7 transported two illegal

12    aliens, L.F.M.C. and E.A.M.C., from Los Angeles toward Phoenix.

13    Harboring and Holding Illegal Aliens Hostage in July 2024

14    Overt Act No. 27:    Prior to April 7, 2024, illegal alien M.M.A.

15    arranged with unindicted co-conspirator members of the Renoj-Matul

16    TCO to be smuggled from Guatemala to the United States for a pre-

17    arranged fee of at least $15,000 to be paid by a third party.

18    Overt Act No. 28:    In and around April 2024, unknown unindicted

19    co-conspirators arranged for M.M.A. to be smuggled from Guatemala,

20    through Mexico, and into the United States near Phoenix.

21    Overt Act No. 29:    In and around late April and early May 2024,

22    unknown unindicted co-conspirators transported M.M.A. to Los Angeles

23    and the Wood House.

24    Overt Act No. 30:    Beginning in late April 2024, after a third

25    party reneged on paying M.M.A.'s smuggling fees, unindicted co-

26    conspirators in Guatemala and defendant RENOJ-MATUL called M.M.A.'s

27    mother and threatened to harm M.M.A., including by warning that she

28    "would come home in a box" if her smuggling fees were not paid.

Overt Act No. 31:   From early May 2024, through July 10, 2024, defendants RENOJ-MATUL and MEJIA-CHAJ and unindicted co-conspirator 11 held M.M.A. against her will at the Wood House.

Overt Act No. 32:   Prior to May 5, 2024, the mother of illegal alien J.E.L.L. arranged with unindicted co-conspirator 8 to smuggle J.E.L.L. into the United States and, in particular, to Miami, Florida, in exchange for a fee of at least $17,000.

Overt Act No. 33:   On May 5, 2024, unindicted co-conspirator 9 took J.E.L.L. to the Guatemala-Mexico border and handed him off to Mexico-based smugglers.

Overt Act No. 34:   In and around June 2024, after J.E.L.L. had been smuggled across the Mexico-United States border, unindicted co-conspirator 10 picked up J.E.L.L. and held him at a stash house in and around Phoenix.

Overt Act No. 35:   In or around June 2024, unindicted co-conspirator 11 picked up J.E.L.L. and transported him from in and around Phoenix to the Wood House.

Overt Act No. 36:   From in or around June 2024 through July 10, 2024, defendants RENOJ-MATUL and MEJIA-CHAJ, and unindicted co-conspirator 11, held J.E.L.L. against his will at the Wood House.

Overt Act No. 37:   Beginning in and around June 2024, defendant RENOJ-MATUL, unindicted co-conspirator 8, and other conspirators, called J.E.L.L.'s mother in Guatemala demanding payment for smuggling and transporting J.E.L.L.

Overt Act No. 38:   On July 5, 2024, defendant RENOJ-MATUL showed a photograph on his phone of J.E.L.L.'s mother that J.E.L.L. had never seen before to scare J.E.L.L. into convincing his family to pay his unpaid smuggling fee.

Overt Act No. 39:   On August 7, 2024, unindicted co-conspirator 12 called M.M.A.'s mother blaming her for the law enforcement search of the Wood House on July 10, 2024.

Overt Act No. 40:   On December 16, 2024, three unknown unindicted co-conspirators in Guatemala travelled to M.M.A.'s mother's home in Guatemala and demanded payment for the smuggling of M.M.A. and threatened M.M.A.'s mother with firearms.

Transportation of Illegal Aliens on November 19, 2024

Overt Act No. 41:   On November 19, 2024, defendant RENOJ-MATUL arranged for unindicted co-conspirator 1 to transport an illegal alien, O.G.V., from Los Angeles to Austin, Texas.

Overt Act No. 42:   On November 19, 2024, unindicted co-conspirator 1 transported an illegal alien, O.G.V., from Los Angeles towards Austin.

COUNT TWO

[8 U.S.C. §§ 1324(a)(1)(A)(ii), (A)(v)(II), (B)(i), (iv);

18 U.S.C. § 2(a)]

[DEFENDANTS OBISPO-HERNANDEZ AND PAXTOR-OXLAJ]

23.  On or about November 21, 2023, in Los Angeles County, within the Central District of California, the Western District of Oklahoma, and elsewhere, defendants HELMER OBISPO-HERNANDEZ, also known as ("aka") "Xabi," aka "Xavi," and JOSE PAXTOR-OXLAJ, aka "Vale Viente," each aiding and abetting each other, knowing and in reckless disregard of the fact that alien J.M.L.A. had come to, entered, and remained in the United States in violation of the law, knowingly transported and moved alien J.M.L.A. within the United States, in furtherance of such violation of law, for the purpose of private financial gain and resulting in death.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[18 U.S.C. §§ 1203(a), 2(a)]

[DEFENDANTS RENOJ-MATUL AND MEJIA-CHAJ]

24.  Beginning on or about April 2024, and continuing until on or about July 10, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants EDUARDO DOMINGO RENOJ-MATUL, also known as ("aka") "Turko," aka "Turco," aka "El Jefe," aka "Patron," aka "El Gallo," and CRISTOBAL MEJIA-CHAJ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and intentionally seized and detained, and threatened to kill, injure, and continue to detain a person, namely, J.E.L.L., a national of Guatemala, in order to compel third persons to do an act, namely, to pay smuggling fees to the hostage takers, as an explicit condition for the release of J.E.L.L.

COUNT FOUR

[18 U.S.C. §§ 1203(a), 2(a)]

[DEFENDANTS RENOJ-MATUL AND MEJIA-CHAJ]

25.  Beginning on or about April 2024, and continuing until on or about July 10, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants EDUARDO DOMINGO RENOJ-MATUL, also known as ("aka") "Turko," aka "Turco," aka "El Jefe," aka "Patron," aka "El Gallo," and CRISTOBAL MEJIA-CHAJ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and intentionally seized and detained, and threatened to kill, injure, and continue to detain a person, namely, M.M.A., a national of Guatemala, in order to compel third persons to do an act, namely, to pay smuggling fees to the hostage takers, as an explicit condition for the release of M.M.A.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982(a)(6)(A), 8 U.S.C. 1324(b)(1), 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(6)(A), Title 8, United States Code, Section 1324(b), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One or Two of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States the following:

(a)    Any conveyance, including any vessel, vehicle, or aircraft, that has been or is being used in the commission of any such offense;

(b)    Any property, real or personal, that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense or was used to facilitate, or was intended to be used to facilitate, the commission of the offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a)

18

cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

FORFEITURE ALLEGATION TWO

2

[18 U.S.C. § 981(a)(1)(C) and (G) and 28 U.S.C. § 2461(c)]

3    1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 981(a)(1)(C) and (G) and Title 28, United

7  States Code, Section 2461(c), in the event of any defendant's

8  conviction of the offenses set forth in any of Counts Three or Four

9  of this Indictment.

10    2.    Any defendant so convicted shall forfeit to the United

11  States of America the following:

12        (a)    All right, title, and interest in any and all

13  property, real or personal, constituting, or derived from, any

14  proceeds traceable to the offenses;

15        (b)    All right, title, and interest in any and all

16  property, real or personal derived from, involved in, or used or

17  intended to be used to commit the offenses; and

18        (c)    To the extent such property is not available for

19  forfeiture, a sum of money equal to the total value of the property

20  described in subparagraphs (a) and (b).

21    3.    Pursuant to Title 21, United States Code, Section 853(p),

22  as incorporated by Title 28, United States Code, Section 2461(c), any

23  defendant so convicted shall forfeit substitute property, up to the

24  value of the property described in the preceding paragraph if, as the

25  result of any act or omission of said defendant, the property

26  described in the preceding paragraph or any portion thereof (a)

27  cannot be located upon the exercise of due diligence; (b) has been

28

1  transferred, sold to, or deposited with a third party; (c) has been

2  placed beyond the jurisdiction of the court; (d) has been

3  substantially diminished in value; or (e) has been commingled with

4  other property that cannot be divided without difficulty.

5

6                                    A TRUE BILL

7

8                                    /S/_____
                                     Foreperson
9

10  JOSEPH T. MCNALLY
    Acting United States Attorney
11

12  *Lindsey Greer Dotson*

13  LINDSEY GREER DOTSON
    Assistant United States Attorney
14  Chief, Criminal Division

15  J. MARK CHILDS
    Assistant United States Attorney
16  Chief, International Narcotics,
    Money Laundering, and Racketeering
17  Section

18  SHAWN J. NELSON
    ELIA HERRERA
19  Assistant United States Attorneys
    International Narcotics, Money
20  Laundering, and Racketeering Section

21

22

23

24

25

26

27

28